UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND; TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK; and THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS, | 22 Civ. 1807 (KPF) |
| Petitioners, | **OPINION AND ORDER** |
| -v.- | |
| BLUE MOON HEALTH MANAGEMENT LLC, | |
| Respondent. | |

KATHERINE POLK FAILLA, District Judge:

Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (collectively, the "ERISA Funds"); Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"); the Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro," and together with the ERISA Funds and the Charity Fund, the "Funds"); and the New York City District Council of Carpenters (the "Union," and together with the Funds, "Petitioners"), filed this motion for summary judgment as to their petition to confirm an arbitral award (the "Award"). The Court has jurisdiction to confirm the Award pursuant to Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), *as amended*, 29 U.S.C.

§ 185.  The motion is unopposed, inasmuch as Respondent Blue Moon Health

Management LLC has neither acknowledged the petition nor made any effort to

contest confirmation of the Award.  For the reasons set forth in the remainder

of this Opinion, the Court grants Petitioners' motion.

**BACKGROUND**[1]

**A.      Factual Background**

Respondent became bound to the New York City Housing Authority

Project Labor Agreement (the "PLA") following its execution of a letter of assent

for a project regarding the Fulton Houses Community Center.  (Pet. 56.1 ¶¶ 6-

7; Davidian Decl. ¶¶ 8-9).  By way of its assent to the PLA, Respondent also

became bound to an Independent Building Construction Agreement with the

Union (the "CBA") covering the period July 1, 2017, through June 30, 2024.

(Pet. 56.1 ¶¶ 10-12).  Under both the CBA and the PLA, Respondent is required

---

[1]      The facts set forth in this Opinion are taken from Petitioners' Local Civil Rule
56.1 Statement of Material Facts Not in Issue (Dkt. #13 ("Pet. 56.1")), and from various
exhibits to the Declaration of William Davidian (Dkt. #10 ("Davidian Decl., Ex. [ ]")),
including the December 29, 2021 arbitral award (Dkt. #10-9 (the "Award")), included as
Exhibit J; the Project Labor Agreement Covering Specified Renovation and
Rehabilitation of New York City Housing Authority Buildings and Structures (Dkt. #10-
2 (the "Project Labor Agreement" or "PLA")), included as Exhibit B; the Independent
Building Construction Agreement covering the period July 1, 2017, through June 30,
2024 (Dkt. #10-3 (the "Collective Bargaining Agreement" or "CBA")), included as Exhibit
C; the Revised Statement of Policy for Collection of Employer Contributions (Dkt. #10-7
(the "Collection Policy")), included as Exhibit H; and the Notice of Arbitration Hearing
(Dkt. #10-8 (the "Notice of Hearing")), included as Exhibit I; and the Declaration of
Charles R. Virginia (Dkt. #11 ("Virginia Decl., Ex. [ ]")), including the Final History Bill
for the Court (Dkt. #11-2 (the "Virginia Bill")), included as Exhibit L.  Citations to
Petitioners' Rule 56.1 Statement incorporate by reference the documents cited therein.
Where facts stated in the Rule 56.1 Statement are supported by admissible evidence
and are not contested by Respondent, the Court accepts such facts as
true.  *See* Local Civil Rule 56.1(c)-(d).

For ease of reference, the Court refers to Petitioners' memorandum of law in support of
their motion for summary judgment (Dkt. #12) as "Pet. Br."

2

to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union.  (*Id.* at ¶ 13; CBA Art. XV § 1; PLA Art. 11 § 2).  Additionally, the CBA requires Respondent to furnish its books and records when requested by the Funds for purposes of conducting an audit to ensure compliance with benefit fund contribution requirements.  (Pet. 56.1 ¶ 14; CBA Art. XV § 1).

Pursuant to the terms of the CBA and the PLA, Respondent is also bound to the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy").  (Pet. 56.1 ¶¶ 15-16).  Among the terms of the Collection Policy is an arbitration clause and a provision stating that, should the Funds be required to arbitrate a dispute or file a lawsuit over non-remittance of funds, the Funds are entitled to collect: (i) interest on the unpaid contributions at the rate of the Citibank prime rate plus 2%; (ii) liquidated damages in the amount of 20% of the unpaid contributions; and (iii) reasonable attorneys' fees and costs incurred in collecting unpaid contributions from an employer.  (*Id.* at ¶¶ 18, 30; CBA Art. XV § 6; Collection Policy § V).  In addition to the requirements for remittance of payment by the employer, the Collection Policy also details the process through which the Funds are to determine the estimated amount of an employer's delinquent contributions should the employer fail to remit payments and provide access to its books and records. (Pet. 56.1 ¶¶ 17, 20; Davidian Decl. ¶ 22; Collection Policy § IV).

Following Respondent's refusal to submit to an audit, the Funds conducted an estimated audit pursuant to the terms of the Collection Policy

and found that Respondent had failed to remit contributions in the principal amount of $234,981.80.  (Pet. 56.1 ¶ 23; Award 2).  Accordingly, on November 22, 2021, Petitioners initiated the underlying arbitration proceeding. (Award 1).  On December 2, 2021, arbitrator J.J. Pierson (the "Arbitrator") issued a Notice of Arbitration Hearing (the "Notice of Hearing") to the parties setting forth a hearing date of December 17, 2021.  (Award 1; Notice of Hearing).  In the arbitration, Petitioners alleged that Respondent had refused to permit the Funds' auditors to examine its books and records for the audit period of June 5, 2019, through December 29, 2021, as required under the CBA.  (Award 1).

The Arbitrator convened the hearing on December 17, 2021.  (Award 1). No representative appeared for Respondent.  (*Id.* at 2).  After finding that Respondent had received proper notice of the arbitration, the Arbitrator proceeded with a default hearing.  (*Id.*).  Petitioners submitted evidence in support of their claim, including documentation that Respondent was bound to the terms of the Collection Policy.  (Pet. 56.1 ¶¶ 21-24).

On December 29, 2021, the Arbitrator rendered an award in favor of Petitioners.  (Pet. 56.1 ¶¶ 25-26; Award 2-3).  The Arbitrator found, based on the evidence presented by Petitioners, that Respondent violated the CBA when it (i) failed to submit to an audit for the period of June 5, 2019, through December 29, 2021, and (ii) failed to remit all required contributions to the Funds.  (Pet. 56.1 ¶ 26; Award 2).  As such, the Arbitrator ordered Respondent to make available its books and records within thirty days for an audit for the

period June 5, 2019, through December 29, 2021, noting that all costs relating to the audit were to be borne by Respondent, including "any supplemental matters which may arise in the event that any additional legal services are required to recover amounts due the Funds as established by the Audit." (Award 3; Pet. 56.1 ¶ 26).

Further, the Arbitrator ordered Respondent to pay the Funds a sum of $305,372.39, consisting of a principal delinquency amount of $234,981.80, liquidated damages of $46,996.36, interest of $20,494.23, court costs of $400, attorneys' fees of $1,500, and an arbitrator's fee of $1,000, in accordance with the CBA and the Collection Policy.  (Pet. 56.1 ¶ 26; Award 2-3).  Petitioners served Respondent with a letter demanding compliance with the Award on January 11, 2022, but, to date, Respondent has failed to comply.  (Pet. 56.1 ¶¶ 27-28; Virginia Decl. ¶¶ 3-4).

In addition to the amounts specified in the Award, Petitioners now seek $4,635.50 in attorneys' fees for 19.4 hours of work performed by Virginia & Ambinder, LLP ("V&A"), and $77 in costs related to the filing of this matter, which costs exclude the $400 in court costs set forth in the Award.  (Pet. 56.1 ¶¶ 33-36; Virginia Decl. ¶¶ 7-13; Virginia Bill).

B.    **Procedural Background**

Petitioners filed the instant petition to confirm the Award on March 3, 2022.  (Dkt. #1).  On March 7, 2022, the Court ordered Petitioners to move for confirmation of the Award in the form of a motion for summary judgment on or before March 21, 2022.  (Dkt. #7).  Petitioners served Respondent with the

Petition on March 8, 2022 (Dkt. #8).  The Court ordered Respondent to file any opposition brief by April 4, 2022, and Petitioners to file their reply by April 11, 2022.  (Dkt. #7).  Petitioners filed their summary judgment motion and supporting papers on March 18, 2022, requesting that the Court: (i) confirm the Award; (ii) award Petitioners attorneys' fees and costs incurred in bringing this litigation; and (iii) award post-judgment interest.  (Dkt. #9-13; Pet. Br. 2-8).  Petitioners served Respondent with the Motion for Summary Judgment on March 22, 2022.  (Dkt. #14).  Respondent has neither filed opposition papers nor appeared in the case.  As such, Petitioners' motion is ripe for the Court's consideration.

## DISCUSSION

**A.    The Court Confirms the Arbitration Award**

    **1.    Applicable Law**

        **a.    Confirmation of Arbitration Awards**

"Section 301 of the [LMRA], 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Assoc. Musicians of Greater N.Y.* v. *Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  Federal court review of arbitral awards is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am.* v. *Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015) (internal quotation marks and citation omitted).  "The federal policy in favor of enforcing arbitration awards is particularly strong

with respect to arbitration of labor disputes." *N.Y. Hotel & Motel Trades Council* v. *Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997).  Because the LMRA "embodies a 'clear preference for the private resolution of labor disputes,'" *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers* v. *Niagara Mohawk Power Corp.,* 143 F.3d 704, 714 (2d Cir. 1998)), judicial review of arbitral awards in this context is "among the most deferential in the law," *id.* at 532.

Confirmation of an arbitration award is thus generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]" *D.H. Blair & Co., Inc.* v. *Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted).  The Court's task is not to reconsider the merits of the dispute; after all, the parties bargained for the arbitrator's view of the facts and the law.  *Nat'l Football League Mgmt. Council*, 820 F.3d at 536.  Instead, the Court's role is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'"  *Id.* at 537 (quoting *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) ("It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (quoting *United Steelworkers of Am.* v. *Enter. Wheel & Car*

7

*Corp.*, 363 U.S. 593, 597 (1960))).  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case.  Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award."  *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks and citations omitted).  Given this deference and limited review, an arbitral award will normally be vacated "only upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law."  *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).[2]

### b. Summary Judgment Under Federal Rule of Civil Procedure 56

When a petition to confirm an arbitration award is unopposed, courts treat "the petition and accompanying record ... as akin to a motion for summary judgment."  *D.H. Blair & Co.*, 462 F.3d at 109.  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[2]     By statute, an award may be vacated:

> [i] where the award was procured by corruption, fraud, or undue means; [ii] where there was evident partiality or corruption in the arbitrators, ... ; [iii] where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or [iv] where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[3]  A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of demonstrating the absence of a disputed material fact, and in making this determination the Court must view all facts in the light most favorable to the non-moving party.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met its initial burden, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  *Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).  When a summary judgment motion is unopposed, "the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."  *Vt. Teddy Bear Co., Inc.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted).

---

[3]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

2.    **Analysis**

Petitioners' uncontroverted evidence demonstrates the absence of a triable dispute regarding the validity of the Award.  The Arbitrator heard Petitioners' case only after finding that Respondent was in default.  (Award 2).  Petitioners presented evidence demonstrating that Respondent was required to make certain payments to the Funds, and that such payments were not made pursuant to the terms of the CBA and Collection Policy.  (*Id.*; Pet. 56.1 ¶¶ 23, 26).  The Arbitrator was also provided with proof, by submission of the CBA, the Collection Policy, and the relevant trust agreements, that Respondent had consented to arbitrate disputes related to its contribution obligations.  (Pet. 56.1 ¶¶ 15-18, 24).  Moreover, the Arbitrator's decision was well-reasoned; given the evidence presented, there clearly exists a "colorable justification" for the Award.  *See D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).

Additionally, there are no grounds for setting aside the Award.  None of the statutory grounds for vacatur applies to this case: the record does not indicate that (i) Petitioners acquired the Award via corruption, fraud, or undue means; (ii) the Arbitrator was unfairly biased; (iii) the Arbitrator engaged in misconduct or prejudicial behavior; or (iv) the Arbitrator acted beyond the explicit scope of his powers.  *See* 9 U.S.C. § 10(a) (providing the four statutory grounds for vacatur of an arbitral award).  Lastly, Respondent has made no showing (and the Court's independent review has not revealed any evidence)

10

that, in rendering the Award, the Arbitrator acted in "manifest disregard" of the law. *Porzig*, 497 F.3d at 139.

Accordingly, judgment in the amount of $305,372.39 is appropriate, and both the record and the deferential standard of review due under the LMRA require the Court to confirm the Award.

## B.   The Court Grants in Part Petitioners' Application for Attorneys' Fees and Costs

### 1.   Applicable Law

Having addressed the Award, the Court now turns to Petitioners' application for reimbursement of fees incurred in this litigation.  "Generally, 'in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Formula 1 Builders, LLC*, No. 17 Civ. 1234 (GHW), 2017 WL 1483369, at *4 (S.D.N.Y. Apr. 25, 2017) (quoting *Int'l Chem. Workers Union (AFL-CIO), Local No. 227* v. *BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). But while Section 301 of the LRMA does not provide for the award of attorneys' fees, two independent bases support such an award here.

*First*, "a contractual provision for the payment of [attorneys'] fees provides a basis to award them." *N.Y.C. Dist. Council of Carpenters* v. *JFD Sales Consulting Servs. Corp.*, No. 17 Civ. 3733 (LGS), 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017).  *Second*, a court may "exercise its inherent equitable powers to award attorney's fees when opposing counsel acts in bad faith." *N.Y.C. Dist. Council of Carpenters* v. *Gen-Cap Indus., Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *5 (S.D.N.Y. July 20, 2012)  A finding of

11

bad faith may be made "when a challenger refuses to abide by

an arbitrator's decision without justification[.]"  *Trs. of N.Y.C. Dist. Council of*

*Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship,*

*Journeyman, Retraining, Educ. & Indus. Fund* v. *Mountaintop Cabinet Mfr. Corp.,*

No. 11 Civ. 8075 (JMF), 2012 WL 3756279, at *4 (S.D.N.Y. Aug. 29, 2012)

(internal quotation marks and citation omitted).

    To determine an appropriate attorneys' fees award, the Court must

assess the reasonableness of the attorney's hourly rate and the number of

hours she billed at that rate.  *See generally Lilly* v. *City of New York*, 934 F.3d

222, 227-33 (2d Cir. 2019).  "A reasonable hourly rate is 'what a reasonable,

paying client would be willing to pay.'"  *N.Y.C. & Vicinity Dist. Council of*

*Carpenters* v. *Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL

3951187, at *2 (S.D.N.Y. July 19, 2016) (quoting *Watkins* v. *Smith*, No. 12 Civ.

4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015)).  "Hours that are

excessive, redundant, or otherwise unnecessary, are to be excluded from the

calculation of a reasonable fee."  *Id.* (internal quotation marks omitted).

    In addition to attorneys' fees, the prevailing party may also recover

reasonable costs incurred in seeking confirmation of the Award.  Generally,

courts in this Circuit will "grant 'those reasonable out-of-pocket expenses

incurred by attorneys and ordinarily charged to their clients.'"  *Trs. of N.Y.C.*

*Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund &*

*Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Metroplex Serv.*

*Grp., Inc.*, No. 18 Civ. 5889 (PAE), 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018) (quoting *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

### 2. Analysis

As a preliminary matter, "when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *BASF Wyandotte Corp.*, 774 F.2d at 47 (citation omitted). Here, Respondent has not appeared, and has failed to justify its refusals to appear at the arbitration hearing or to abide by the Award. Additionally, per the terms of the CBA and the Collection Policy, Respondent must pay any attorneys' fees "incurred by the Union and/or fund trustees, plus costs of litigation, which have resulted from the bringing of such court action" (CBA Art. XVII § 19(c)), and such fees "shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services … for all time spent by Collection Counsel in collection efforts or in enforcing the Board of Trustees' rights to … audits." (Collection Policy § V(6); Pet. 56.1 ¶¶ 30-31). Lastly, the Arbitrator noted in the Award that all costs of the audit were to be borne by Respondent, including "any supplemental matters which may arise in the event that any additional legal services are required to recover amounts due the Funds as established by the Audit," such as the instant action to confirm the Award. (Award 3). The Court therefore deems it appropriate to award attorneys' fees.

Next, the Court turns to the reasonableness of the fees sought. In this regard, V&A submitted hourly rates for its partners, associates, and legal

assistants. "A reasonable hourly rate is a rate 'in line with ... prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11 (1984)). "It is within the Court's discretion to reduce the requested rate when the Court finds the rate unreasonable in the relevant market." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Mahi Painting, Inc.*, No. 22 Civ. 6496 (GHW), 2022 WL 7584364, at *5 (S.D.N.Y. Oct. 13, 2022) (internal quotation marks and citation omitted and alteration adopted).

Nicole Marimon, a 2014 graduate of Fordham University School of Law and former partner at V&A, is billed out by the firm at a rate of $350 per hour. (Virginia Decl. ¶ 8; Pet. 56.1 ¶ 33). Ms. Marimon worked a total of 0.8 hours on this case, resulting in a total cost of $280 for her services. (Virginia Bill). Maura Moosnick, a 2021 graduate of Fordham University School of Law and associate at V&A, is billed out by the firm at a rate of $275 per hour. (Virginia Decl. ¶ 9; Pet. 56.1 ¶ 33). Ms. Moosnick worked a total of 13.7 hours on this matter, resulting in a total cost of $3,767.50 for her services. (Virginia Bill). Lastly, Eva Keating, Abigail Frankel, and Morgan Behrens, three legal assistants at V&A, worked a total of 4.9 hours on this matter, and were billed out by the firm at a rate of $120 per hour, resulting in a total cost of $588 for their services. (Virginia Decl. ¶ 10; Virginia Bill; Pet. 56.1 ¶ 33).

The Court has reviewed the contemporaneous time records and compared them against the prevailing rates in the community.  It finds the rates requested for the work of the three legal assistants to be reasonable, and modestly adjusts the rates of Ms. Marimon and Ms. Moosnick to $325 per hour and $225 per hour, respectively.

Beginning with the legal assistants, the Court observes that courts in this District have routinely held $120 to be reasonable for similar, if not identical, services by such individuals.  *See, e.g.*, *Mahi Painting, Inc.,* 2022 WL 7584364, at *5 (finding $120 per hour for V&A legal assistants to be reasonable); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Innovation Designs Inc.*, No. 21 Civ. 2801 (KPF), 2021 WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Skyeco Grp. LLC*, No. 19 Civ. 7608 (LGS), 2019 WL 6497533, at *3 (S.D.N.Y. Dec. 3, 2019) (same).

Turning next to Ms. Marimon, the Court finds that her rate is above the rate ordinarily awarded for similar services in other cases.  Over the course of the past two years, she has sought and generally been awarded fees at rates spanning from $275 to $325 per hour by courts in this District, including by this Court.  *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Manzo*, No. 21 Civ. 504 (LGS), 2021 WL 3082291, at *4

15

(S.D.N.Y. July 20, 2021) (awarding Ms. Marimon fees at an hourly rate of

$275); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund,*

*Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus.*

*Fund* v. *JB Squared Constr. Corp.*, No. 20 Civ. 2659 (KPF), 2020 WL 6825693,

at *6 (S.D.N.Y. Nov. 19, 2020) (awarding Ms. Marimon fees at an hourly rate of

$325); *Trs. for N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund,*

*Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*

v. *All Flooring Sols., LLC*, No. 19 Civ. 11065 (KPF), 2020 WL 2571042, at *6

(S.D.N.Y. May 21, 2020) (granting Ms. Marimon's request for attorneys' fees at

a rate of $275 per hour).

Conversely, when Ms. Marimon requested attorneys' fees at a rate of

$350 per hour for work performed in 2020 and 2021, several courts declined to

award her that rate.  *See, e.g.*, *Innovation Designs, Inc.*, 2021 WL 4869951, at

*6-7 (rejecting Ms. Marimon's requested rate of $350 and adjusting the rate to

$325); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund,*

*Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus.*

*Fund* v. *Galt Installations, LLC*, No. 20 Civ. 2582 (JGK), 2020 WL 6274774, at

*3 (S.D.N.Y. Oct. 26, 2020) (finding that $350 per hour was "above the range of

fees ordinarily awarded ... for similar services in other cases"); *Trs. of N.Y.C.*

*Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund,*

*Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Shorecon-NY,*

*Inc.*, No. 17 Civ. 5210 (RA), 2020 WL 3962127, at *5 (S.D.N.Y. July 13,

2020) (reducing Ms. Marimon's rate to $300 per hour for work performed in

16

2020); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Triangle Enter. NYC, Inc.*, No. 20 Civ. 793 (RA), 2020 WL 2306484, at *5 (S.D.N.Y. May 8, 2020) (reducing Ms. Marimon's requested rate of $350 per hour, observing that "Ms. Marimon [had requested] a rate of $275 per hour for work performed only two to three months earlier"); *but see Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *1st Choice Constr. LLC*, No. 20 Civ. 7119 (LTS), 2021 WL 4482278, at *3 (S.D.N.Y. Sept. 30, 2021) (awarding Ms. Marimon her requested hourly rate of $350). After reviewing the cases from this District, the Court finds, as it has previously, that Ms. Marimon's continued practice and additional experience in this field warrant a rate of $325 per hour, amounting to a total amount of $260 in fees for 0.8 hours worked.

Finally, as to Ms. Moosnick, the Court finds that an hourly rate of $225 would represent the upper bound of the appropriate rate for an attorney with Ms. Moosnick's experience, and thus the Court adjusts her hourly rate from $275 to $225, amounting to a total of $3,082.50 in fees for 13.7 hours worked. *See Mahi Painting, Inc.*, 2022 WL 7584364, at *6 (recently-issued opinion adjusting Ms. Moosnick's award from $275 to $225); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Eclipse Constr. Servs. Inc.*, No. 21 Civ. 7868 (GHW), 2021 WL 5567752, at *6 (S.D.N.Y. Nov. 26, 2021) (reducing the hourly rate from $275 to $225 for V&A attorney who

graduated from law school in 2016); *see also Triangle Enter. NYC, Inc.*, 2020 WL 2306484, at *6 (same); *Metroplex Serv. Grp., Inc.*, 2018 WL 4141034, at *5 (reducing hourly rate of V&A associate who graduated law school in 2016 from $275 to $225, which "represents the upper bound of prevailing rates in this District for junior associates"); *but see Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ., & Indus. Fund* v. *W.W. Timbers, Inc.*, 19 Civ. 6132 (ER), 2020 WL 1922374, at *5 (S.D.N.Y. Apr. 21, 2020) (awarding V&A associate her requested rate of $275).

In sum, Petitioners' request for attorneys' fees is granted at the reduced rate of $325 per hour for Ms. Marimon's work, the reduced rate of $225 per hour for Ms. Moosnick's work, and the requested rate of $120 per hour for the legal assistants' work. Based on the submitted time records, these rates yield a total award of $3,930.50 in additional attorneys' fees.

Additionally, the Court finds Petitioners' request for $77 in costs to be reasonable. This minimal figure excludes the $400 in costs awarded by the Arbitrator and consists primarily of a filing fee, which courts in this District regularly deem to be reasonable in arbitration confirmation proceedings. (Pet. 56.1 ¶ 36; Virginia Decl. 2; Virginia Bill). *See Innovation Designs Inc.*, 2021 WL 4869951, at *8 (finding $109.40 in costs to be reasonable when excluding the $400 in costs awarded by the arbitrator); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *JFD Sales Consulting Servs.*

*Corp.*, No. 16 Civ. 8627 (AJN), 2017 WL 11568809, at *5 (S.D.N.Y. Aug. 23, 2017) (finding $70 in service costs to be supported by the record and reasonable).

## C.    Post-Judgment Interest

Federal law "provides a uniform rate at which post-judgment interest is to accrue on civil money judgments recovered in federal district court." *Westinghouse Credit Corp.* v. *D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004) (citing 28 U.S.C. § 1961). Specifically, post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court … calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding … the date of the judgment." 28 U.S.C. § 1961(a). Indeed, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered," *Lewis* v. *Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)), and "[a]wards of post-judgment interest under § 1961 … apply to actions to confirm arbitration awards," *Trs. for the Mason Tenders Dist. Council Welfare Fund* v. *Euston St. Servs., Inc.*, No. 15 Civ. 6628 (GHW), 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (citing *Westinghouse*, 371 F.3d at 100-01 (awarding post-judgment interest in action to confirm arbitration award)). Accordingly, the Court grants Petitioners' request for post-judgment interest.

**CONCLUSION**

For the foregoing reasons, Petitioners' motion for summary judgment is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Petitioners in the amount of $309,379.89, consisting of: (i) the arbitration award of $305,372.39; (ii) $3,930.50 in attorneys' fees; and (iii) $77 in costs. Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961.

The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      October 31, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

20